## AMERICAN PELAGIC FISHING COMPANY, L.P., Plaintiff,

v.

## The UNITED STATES, Defendant.

### No. 99–119C.

United States Court of Federal Claims.

April 16, 2002.

Laurie Frost Wilson, Lorton, VA, argued for plaintiff. With her on the briefs was Stephen A. Saltzburg, Washington, D.C.

James H. Holl, III, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, argued for defendant. With him on the briefs were Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, and Deborah A. Bynum, Assistant Director.

### OPINION

BRUGGINK, Judge.

Pending are defendant United States' Motion to File an Amended Answer to Assert Affirmative Defenses and a Counterclaim Based Upon a Special Plea in Fraud and plaintiff American Pelagic Fishing Company's Cross-motion to Strike Defendant's Motion for Leave to File an Amended Answer, or, in the Alternative, Cross–Motion for a More Definite Statement and its Motion for a Postponement of Certain Pre–Trial Scheduling Dates. For the reasons set out below,

---

the government's motion is denied[1] and plaintiff's motions are denied in part as moot and granted in part.

## BACKGROUND

Plaintiff American Pelagic Fishing Company ("APFC"), former owner of the fishing vessel *Atlantic Star*, seeks compensation under the Fifth Amendment for a taking by the government as a result of two appropriations riders which rendered null and void fishery permits and gear authorization letters issued to the *Atlantic Star*. In *American Pelagic Fishing Co. v. United States*, 49 Fed.Cl. 36 (2001), we found the government liable for a regulatory taking of the use of the vessel. The government now moves for leave to file an amended answer to assert affirmative defenses and a counterclaim based upon a special plea in fraud. For the reasons set out below, we deny the motion to amend.

## DISCUSSION

Defendant seeks leave under RCFC 15(a) to amend its answer to add a fraud counterclaim. The rule dictates that leave of court is required to amend, although leave should be freely exercised "when justice so requires." Under the present circumstances, justice requires the opposite result.

This action was filed in 1999. The government filed a motion to dismiss on June 17, 1999, which did not raise the question of ownership or flagging. Instead, it asserted that plaintiff failed to state a claim. As part of its response to the motion, plaintiff filed the affidavits of Lisa Torgersen and Harald Torgersen. In these affidavits, the Torgersens made assertions as to the ownership interests in plaintiff APFC and the vessel, *Atlantic Star*. The assertion was made but never contested that the *Atlantic Star* was a U.S.-flagged vessel. The motion to dismiss was denied.

The government filed its answer on February 4, 2000. The government admitted that the "*Atlantic Star* is a U.S.-built fishing vessel documented under the laws of the United States pursuant to 46 U.S.C.A. § 12101 *et seq.* The *Atlantic Star* holds a fishery en-

dorsement issued pursuant to 46 U.S.C.A. § 12108 and a registry endorsement issued pursuant to 46 U.S.C.A. § 12105." Compl. at ¶ 8; Answer at ¶ 8. It disclaimed a basis for knowing whether APFC and the *Atlantic Star* were in compliance with all U.S. Coast Guard citizenship and documentation requirements for U.S.-documented fishing vessels. The answer raised no defenses regarding fraud or improper documentation.

The government filed a motion for summary judgment on October 20, 2000. The focus of the motion was whether the facts could constitute a claim for a taking. No question was raised regarding whether the *Atlantic Star* was properly flagged. Indeed, the government did not contest any of plaintiff's proposed findings as to documentation and flagging. Those matters were therefore deemed admitted and relied on by the court in its opinion granting plaintiff's cross-motion for summary judgment and denying the government's motion. *American Pelagic Fishing Co. v. United States*, 49 Fed.Cl. 36. The government now proposes in its motion to amend to contradict these same admissions.

Before filing its motion for summary judgment, the government had the opportunity to undertake discovery. Apparently, virtually none was in fact conducted until after the court's holding as to liability. Discovery on damages was set to be completed on April 5, 2002. Pretrial materials were to be filed by May 10, 2002. Trial was set for the last week of June 2002. Now, on the eve of trial, the government seeks leave to amend its answer to file a counterclaim asserting that plaintiff perpetrated a fraud in obtaining American flag documentation for the ship.

Title 28 of the United States Code, section 2514, entitled "Forfeiture of fraudulent claims," states:

A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.

In such cases the United States Court of Federal Claims shall specifically find such

---

1. See note 2.

fraud or attempt and render judgment of forfeiture.

28 U.S.C. § 2514 (1994). Under this statute, fraud consists of "knowingly or recklessly making false statements with intent to deceive." *Daff v. United States*, 31 Fed.Cl. 682, 688 (1994). Fraud must be established by clear and convincing evidence. *Id.*

The government contends that APFC knowingly or recklessly, and with intent to deceive, made a false certification to the Coast Guard when Lisa Torgersen signed a Coast Guard Form, CG–1258, which the government received on November 12, 1997. A CG–1258, at the time, constituted a certification that:

> [A]ll general partners in this [limited] partnership are citizens of the United States, eligible to document vessels in their own right and that the partnership meets the following equity requirements. Equity interest owned by citizens of the U.S. eligible to document vessels in their own right with the endorsement sought.

In the present case, it constituted a certification that between fifty and seventy-five percent of APFC's general partners were American citizens.

Defendant alleges that this certification violated the Anti–Reflagging Act of 1987, 42 U.S.C. § 12102. According to the motion,

> The United States has uncovered evidence that shows that Mr. Harald Torgersen, a Dutch national and husband of the United States citizen in nominal control [Lisa Torgersen], was to be responsible for the management and operation of the Atlantic Star venture, while a collection of Dutch interests totally dominated the venture's financing, as well as possessed an interest, as a mortgagor, in the means by which the vessel was to generate income (fishing licenses).

Def.'s Mot. to File Am. Answer at 4. In fact, Mr. Torgersen is a Norwegian citizen. In substance, however, the government is alleging a violation of the following:

> (a) A vessel of at least 5 net tons that is not registered under the laws of a foreign country or is not titled in a State is eligible

for documentation if the vessel is owned by-

. . . .

> (3) a partnership whose general partners are citizens of the United States, and the controlling interest in the partnership is owned by citizens of the United States;

. . . .

> (c)(1) A vessel owned by a corporation is not eligible for a fishery endorsement under section 12108 of this title unless the controlling interest (as measured by a majority of voting shares in that corporation) is owned by individuals who are citizens of the United States. However, if the corporation is owned in whole or in part by other United States corporations, the controlling interest in those corporations, in the aggregate, must be owned by individuals who are citizens of the United States.

46 U.S.C. § 12102.

In determining whether the act's provisions regarding controlling interest of a corporation have been violated,

> (2) The Secretary shall apply the restrictions on controlling interest in section 2(b) of the Shipping Act, 1916 (46 App. U.S.C. 802(b)) when applying this subsection.

*Id.*

Section 2(b) of the Shipping Act of 1916, in turn, states:

> The controlling interest in a corporation shall not be deemed to be owned by citizens of the United States . . . (c) if through any contract or understanding it is so arranged that the majority of the voting power may be exercised, directly or indirectly, in behalf of any person who is not a citizen of the United States; or, (d) if by any other means whatsoever control of the corporation is conferred upon or permitted to be exercised by any person who is not a citizen of the United States.

46 App. U.S.C. § 802(b).

It bears noting that these latter provisions, upon which the government heavily relies, only apply to corporations, whereas plaintiff is a limited partnership. In any event, the Coast Guard has promulgated regulations stating that entities subject to the control of

non-citizens "by any other means" are not citizens for the purposes of obtaining the certificates of documentation necessary for their vessel(s) to partake of United States fisheries. *See* 46 C.F.R. §§ 67.01–5, 67.03–2, 67.03–5 (1991).

Title 46 of the Code of Federal Regulations, section 67.43, entitled "Evidence of citizenship," states:

> When received by the Coast Guard, a properly completed original Application for Initial Issue, Exchange, or Replacement of Certificate of Documentation; or Redocumentation (form CG–1258) establishes a rebuttable presumption that the applicant is a United States citizen.

46 C.F.R. § 67.43 (2001).

The government alleges that APFC's Dutch financiers and Mrs. Torgersen's Norwegian husband substantially and excessively controlled APFC and the *Atlantic Star,* thus rendering it a non-citizen. It further contends that Lisa Torgersen was aware of APFC's foreign character, as well as the statutory and regulatory citizenship requirements for fishing vessels. Thus, the government argues, Mrs. Torgersen's alleged certification that APFC was a citizen on the November 12, 1997 CG–1258 was a fraudulent statement.

The initial motion contained virtually no specifics or documentation to support the allegation of fraud. Plaintiff's response went into substantial detail on what it understood the issue to be. In an effort to expedite the matter in view of the imminence of trial, oral argument was held without the benefit of a reply brief.

During oral argument, the government was unable to cite any specific document that was allegedly executed fraudulently. Nor did it provide any coherent argument as to what law was violated. The government indicated that it relied in large measure on advice given to it by Thomas Willis, the Director of the United States Coast Guard National Vessel Documentation Center. In his affidavit, which the court allowed to be filed subsequently, he states that, if he had known in 1997 what he says he knows now, he would have pulled the American flag off

the vessel. The court allowed a reply brief, however. In it, the government made more specific allegations, and attached several documents. Because the specific support came in what would otherwise have been the final brief, we allowed plaintiff a surresponse.

The specific allegation on which the government now rests its claim of fraud is that the 1997 certification of the CG–1258 form by APFC was signed by Lisa Torgersen and that the statements made in it were false. We note that there is no signed copy of this document before the court. Presumably someone from APFC with authority signed the original (otherwise the certifications would not have been accepted), but the government was only able to furnish the first page, which does not contain a place for a signature. We are willing to assume, nevertheless, that Mrs. Torgersen probably signed the form.

We also note, however, that this form was filed with the Coast Guard in 1997. The government has had this and other registration documents in its possession for over four years. It can hardly claim surprise or that the support for its fraud claim was concealed or unavailable. Documents reflecting the participation of foreign lenders and the existence of a mortgage were public or were furnished to the Coast Guard long ago. Nor, for that matter, has the government made any serious effort at justifying the late assertion of a counterclaim. We are left with the fact that it offers no legitimate excuse for delaying its amendment till the eve of trial on damages.

Nor does the government even now seem to have a clear understanding of what law applies to the certification it claims to have been fraudulently made. During oral argument, counsel referred the court to code sections that do not, on their face, apply to limited partnerships like APFC. Until October 2001, when the amendment of section 12102(c) to apply to partnerships and other entities took effect, that portion of the statute appeared to apply only to corporations. It is therefore very questionable whether section (c)(1) of the Anti–Reflagging Act applied to limited partnerships such as APFC in 1997. At the time, the statute only stated

that a vessel owned by a *corporation* would not be eligible for a fishery endorsement unless American citizens owned a controlling interest in that corporation. 46 U.S.C. § 12102(c)(1).

More importantly, the government must ultimately satisfy the standard of proof for a claim of a special plea in fraud-that Mrs. Torgersen made the certification with knowledge or recklessness of the fact that it was false or with an intent to deceive. There is not a shred of credible evidence to support this serious allegation. The government cites many things, including the partnership agreement, the presence of Dutch loans in the venture's financing, and the role of Harald Torgersen in obtaining financing for and managing the venture in an attempt to demonstrate that APFC and the *Atlantic Star* were foreign-controlled. However, none of these sources or observations constitute proof that the *Atlantic Star* was improperly flagged. Much less do they demonstrate that APFC or Lisa Torgersen intended to deceive the government into believing that APFC was an American entity. Defendant points to nothing that makes it improper for the ship to have been mortgaged to foreign interests. Nor can it point to any prohibition on hiring a foreigner to conduct day-to-day operations.

On the face of it, the certification itself could not be false. The partnership was fifty-one percent domestically controlled. The government is reduced to arguing that Mr. Willis was of the view that, if one applied the statutory provisions applicable to corporations, one might conclude that, as a practical matter, control of the partnership rested in foreign hands. Even if he could have applied those provisions to the plaintiff, however, it could only have been by way of revocation of documentation after the fact. It would be his judgment, in other words, that, although the letter of the law was observed, in fact, the spirit was violated.

One is entitled to rely on the technical requirements of the law and the documentation forms provided by the government. Mr. Willis' "hunch" that he smelled a rat, to the extent it is wielded now as a basis for fraud, amounts, at best, to a difference of judgment as to what constitutes compliance with the law. At worst, it amounts to secret law.

It is ironic that, as proof of intent, the government points to the fact that Lisa Torgersen had the assistance of experts in ship documentation as well as counsel with extensive experience in meeting the legal requirements. Presumably, these experts were also unaware of Mr. Willis's cuff list of contraindications. Far from showing intent, it supports the validity of the certification.

We are thus left with the presumption that "the applicant is a United States citizen." 46 C.F.R. § 67.43. This fact, coupled with the inexcusable delay in bringing these assertions, compels rejection of the motion to amend.

## CONCLUSION

The government's motion to amend its complaint to include affirmative defenses and a counterclaim based upon fraud is denied.[2] APFC's motions to strike and for postponement of pre-trial scheduling dates are granted in part and denied in part. By separate order the court has directed the parties to attempt to agree on rescheduling the damages trial.

---

**2.** The court issued an order on April 9, 2002, addressing the motions, but indicating that it would subsequently enter this memorandum opinion.